UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

United States of America,

           Plaintiff,

v.

Ronald Hunter,

           Defendant.

_____/

Case No. 92-cr-81058

Hon. Matthew F. Leitman

**United States' Response Opposing
the Defendant's Motion for Compassionate Release**

Ronald Hunter is a murderer and a drug dealer. In 1992, while serving a prison sentence, Hunter escaped from a parole camp in Michigan. Less than three months later, Hunter brutally murdered 23-year old Monica Johnson by shooting her in the head. As Johnson was lying on the ground with a bullet in her skull, Hunter shot her at least three more times.

Hunter was sentenced to life imprisonment for the murder. He is only 51 years old, so he likely has several decades left on his sentence. And his murder of Monica Johnson was the culmination of a lifetime of crime, much of it violent, which has continued to manifest itself in Hunter's lengthy disciplinary record while in prison.

Hunter, however, has now moved for compassionate release under 18 U.S.C. § 3582(c)(1)(A) based on the Covid-19 pandemic and his medical conditions, which include severe obesity. However, Hunter was provided an opportunity to receive the Covid-19 vaccine and he refused. Therefore, even though Hunter is severely obese, given his dangerousness and his refusal to receive the Covid-19 vaccine, his reasons for release are not so "extraordinary and compelling" that they would "warrant" releasing him from his life sentence for murder several decades early. Furthermore, the § 3553(a) factors, which the Court must also consider under § 3582(c)(1)(A), weigh heavily against his release. As a result, Hunter's request should be denied.

## Background

Hunter was a co-conspirator in a large drug conspiracy that operated in Detroit in the 1980s and '90s. *United States v Sellers,* 9 F. App'x 335 (6th Cir. 2001). Members of the conspiracy used violence to maintain power and profitability. "Individuals that attempted to extort or steal the proceeds of the operation, steal cocaine, or cooperate with the police were murdered." *Id.* at 337.

On December 27, 1992, Hunter, assisted by other members of the drug conspiracy, shot and killed Monica Johnson in front of a Detroit nightclub. (PSR, ¶ 22). As Johnson exited the nightclub, Hunter, who was waiting outside, shot her in the head. (PSR, ¶ 22). After Johnson had fallen to the ground, Hunter shot her

2

three or four more times. (PSR, ¶ 22). Hunter murdered Johnson to prevent her from testifying in a kidnapping case against the leader of the drug conspiracy, Timothy Patton, and because Johnson had stolen drug proceeds from Patton. *Sellers,* 9 F. App'x at 337, 339; (PSR, ¶ 22). Hunter was paid one-eighth of a kilogram of cocaine for murdering Johnson. (PSR, ¶ 22).

Hunter was convicted by a jury of murder in furtherance of a continuing criminal enterprise under 21 U.S.C. § 848(e)(1)(A) and carrying a firearm during and in relation to that crime under 18 U.S.C. § 924(c). (Ex. A: Judgment). He was sentenced to life imprisonment on the murder conviction and a consecutive term of 60 months' imprisonment on the § 924(c) conviction. (*Id.*). His convictions and sentence were affirmed on appeal. *Sellers,* 9 F. App'x at 335.

This was not Hunter's only criminal offense. He was convicted of crimes before and after he murdered Monica Johnson. His record includes convictions for drug dealing, assault and battery, felon in possession of a firearm, receiving and concealing stolen property, and fleeing and eluding. (PSR, ¶¶ 48, 50, 52). He has served prior jail and prison sentences, and he has violated his parole several times. (PSR, ¶¶ 48–50, 52). Furthermore, Hunter murdered Monica Johnson only a few months after he had escaped from a prison camp in Grass Lake, Michigan. (PSR, ¶¶ 22, 49, 54).

Hunter is only 51 years old, so he likely has several decades left on his murder sentence. He has been in custody since May 28, 1997. (PSR, ¶ 2). He is currently incarcerated at Pekin FCI, where, as of January 20, 2021, the Bureau of Prisons has reported 94 current Covid-19 cases among inmates, 11 cases among staff, and zero deaths. In addition, 709 inmates and 62 staff members there have recovered from Covid-19. https://www.bop.gov/coronavirus/.

Hunter's underlying medical conditions include severe obesity, hypertension, and hyperlipidemia (high cholesterol). (Sealed Ex. B: Hunter BOP Medical Records, Bates Pg. 001, 015). Based on a review of his medical records from the Bureau of Prisons, medical personnel are monitoring Hunter's medical conditions and are prescribing appropriate medications. (*Id.*, Bates Pg. 001-003, 015-019). As of January 20, 2021, the Bureau of Prisons has administered 17,628 doses of the Covid-19 vaccine to staff and inmates. CDC Covid-19 Vaccine Tracker. Hunter was scheduled to receive the Pfizer Covid-19 vaccine in December 2020, but he refused to be vaccinated. (Sealed Ex. B: Hunter BOP Medical Records, Bates Pg. 026).

On October 1, 2020, Hunter submitted a request for compassionate release that was forwarded to the warden, asking for compassionate release. Hunter based his request on the Covid-19 pandemic and his medical conditions. He did not base it on several of the grounds that he now raises in his motion before this Court,

4

including claims regarding his age at the time he murdered Monica Johnson and the lower sentences his co-defendants received. Hunter's request was denied by the warden on October 13, 2020.

## Argument

### I.  The Court should deny Hunter's motion for compassionate release.

Hunter's motion for a reduced sentence should be denied. A district court has "no inherent authority . . . to modify an otherwise valid sentence." *United States v. Washington*, 584 F.3d 693, 700 (6th Cir. 2009). Rather, a district court's authority to modify a defendant's sentence is "narrowly circumscribed." *United States v. Houston*, 529 F.3d 743, 753 n.2 (6th Cir. 2008). Absent a specific statutory exception, a district court "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c). Those statutory exceptions are narrow. *United States v. Ross*, 245 F.3d 577, 586 (6th Cir. 2001).

Compassionate release under 18 U.S.C. § 3582(c)(1)(A) is equally narrow. It requires a "three-step inquiry," two of which are relevant here. *United States v. Elias*, ___ F.3d ___, No. 20-3654, 2021 WL 50169, at *2 (6th Cir. Jan. 6, 2021); 18 U.S.C. § 3582(c)(1)(A).

First, section 3582(c)(1)(A) requires a defendant  seeking compassionate release to show "extraordinary and compelling reasons" that "warrant" the size of the requested sentence reduction. Hunter's reasons are not "extraordinary and

5

compelling," nor do they "warrant" his release, potentially decades early, from a life prison sentence for murder.

Second, even if a defendant is eligible for compassionate release, a district court may not grant the motion unless the factors in 18 U.S.C. § 3553(a) support release. 18 U.S.C. § 3582(c)(1)(A); *United States v. Ruffin*, 978 F.3d 1000, 1008–09 (6th Cir. 2020). As at sentencing, those factors require the district court to consider the defendant's history and characteristics, the seriousness of the offense, the need to promote respect for the law and provide just punishment for the offense, general and specific deterrence, and the protection of the public. 18 U.S.C. § 3553(a).

### A. Hunter's has not shown "extraordinary and compelling" reasons to "warrant" decades off his sentence for brutally murdering Monica Johnson.

Hunter has not established "extraordinary and compelling reasons" that "warrant" the decades-long sentence reduction that he is now requesting. 18 U.S.C. § 3582(c)(1)(A)(i). A defendant must establish *all* of the statutory criteria to be eligible for release. So the defendant's reasons for release must be "extraordinary." *Id.* They must also be "compelling"—meaning "so great that irreparable harm or injustice would result if the relief is not granted." *United States v. Sapp*, No. 14-CR-20520, 2020 WL 515935, at *3 (E.D. Mich. Jan. 31, 2020). And the reasons must "warrant the requested "reduction" in his sentence. 18 U.S.C.

§ 3582(c)(1)(A)(i). As the Sixth Circuit has explained in analogous circumstances, a dangerous defendant, like Hunter, will have difficulty establishing a "compelling" reason that warrants his release. *See United States v. McGowan*, No. 20-1617, 2020 WL 3867515, at *2 (6th Cir. July 8, 2020).

The government agrees that severe obesity could qualify as an "extraordinary" reason for release during the Covid-19 pandemic. The CDC has confirmed that severe obesity, which is defined as a body mass index (BMI) of at least 40, is a condition that places a person at increased risk of severe illness from Covid-19. *See* CDC Risk Factors (as updated). Hunter is five feet, ten inches tall, and weighs 334 pounds. (ECF No. 957, PageID.1801). This calculates to a BMI of 47.9. Although a defendant's severe obesity *could* qualify as an extraordinary reason that makes him or her eligible for compassionate release consideration, Hunter's severe obesity does not.

The Bureau of Prisons has acquired thousands of doses of the Covid-19 vaccine and is distributing it to staff and inmates. CDC Covid-19 Vaccine Tracker. The Bureau of Prisons has already administered 17,628 doses of the vaccine to staff members and inmates. Pekin FCI is one of the prisons that has received doses of the Pfizer Covid-19 vaccine. The Pfizer Covid-19 vaccine has an efficacy of 95%. https://www.cdc.gov/vaccines/acip/recs/grade/covid-19-pfizer-biontech-vaccine.html. On December 22, 2020, Hunter was scheduled to receive the first

7

dose of the Covid-19 vaccine but he refused to be vaccinated. (Sealed Ex. B:

Hunter BOP Medical Records, Bates Pg. 026).  Hunter's refusal to receive

treatment that is 95% effective in preventing Covid-19 eliminates any argument

that "irreparable harm or injustice would result if the relief is not granted." Hunter

has the ability to substantially reduce his chances of contracting Covid-19 and he

has refused to do so. Under these circumstances, Hunter cannot claim that

"irreparable harm or injustice would result if the relief is not granted." *Sapp*, No.

2020 WL 515935, at *3 (E.D. Mich. Jan. 31, 2020).

In *United States v. Boody,* 3:07-cr-248J32MCR, 2021 WL 137615 (M.D.

Fla. Jan. 14, 2021), the district court denied a motion for compassionate release

under similar circumstances. In *Boody*, the defendant suffered from obesity,

prediabetes, asthma, chronic sinus problems, and seasonal bronchitis. The

defendant also claimed that he previously had a bad reaction to the flu vaccine

such that it would be dangerous for him to receive the Covid-19 vaccine. The court

held that defendant's claim that it would be dangerous for him to receive the

Covid-19 vaccine was "only speculative" and as a result, the defendants had "not

established extraordinary and compelling reasons for compassionate release."

*Boody,* 2021 WL 137615 *1.

Even if the Covid-19 vaccine was not available to Hunter, most courts in this

district and circuit have denied compassionate release in cases like this one, where

8

the defendant's only or primary risk factor was obesity. In *United States v. Atan,* 2020 WL 6130906 (E.D. Mich. Oct. 19, 2020), for instance, the court denied compassionate release to 32-year-old defendant with a BMI of 55 and hematuria, who had served 70% of his 99-month sentence. Similarly, in *United States v. Knight,* 2020 WL 3055987 (E.D. Mich. June 9, 2020), the court denied compassionate release to a defendant with a BMI of 43.9. And in *United States v. Williams*, No. 20-3839, 2020 U.S. App. LEXIS 35649, at *3-4 (6th Cir. Nov. 12, 2020), the Sixth Circuit upheld a district court's decision that an obese defendant had not established extraordinary and compelling reasons for release. There, the district court recognized the increased risk of exposure to Covid-19 in prison, and acknowledged that the defendant was obese. But the district court explained that the defendant had not demonstrated "an extraordinary and compelling reason for reduction of his sentence when considering the great number of people both in and out of prison who are facing these same challenges." *Id*.

The same should be true here. Hunter's reasons for release are not "extraordinary and compelling" that they "warrant" a sentence reduction of this magnitude for such a dangerous defendant. In the pretrial-release context, the Sixth Circuit has already addressed what qualifies as a "compelling" reason for release based on Covid-19. *McGowan*, 2020 WL 3867515, at *2; *United States v. Bothra,* 2020 WL 2611545 (E.D. Mich. May 21, 2020). That analysis considers (1) the

"original grounds" for the defendant's incarceration; (2) the "specificity" of his "stated Covid-19 concerns"; (3) the extent to which the proposed release plan would "mitigate or exacerbate" his risk from Covid-19; and (4) the risk from Covid-19 that his release would pose to others. *McGowan*, 2020 WL 3867515, at *2. In *Bothra*, for example, the defendant was in his 70s and "had health issues rendering him more vulnerable to contracting [Covid-19]." 2020 WL 2611545, at *2. But he was a flight risk, had orchestrated a large and complex fraud scheme, and was detained at a facility that had very few cases of Covid-19. *Id.* The Sixth Circuit thus held that his circumstances did not present a "compelling" reason for release. *Id.*

Hunter's circumstances are even less compelling. He is an extremely dangerous defendant. The original grounds for his incarceration here were for his brutal drug-related murder of a young woman—a murder he committed just months after he escaped from a prison camp. His convictions for this offense, especially when combined with his abysmal criminal record, showed that he required a sentence of life imprisonment regardless of whether the sentencing guidelines at the time were mandatory or discretionary. And unlike the pretrial defendant in *Bothra*, Hunter was *convicted* of his offenses here—not just accused of them. So the justice system's "essential" interest in finality weighs far stronger

against Hunter's release than it did the defendant's release in *Bothra*. *Teague v. Lane*, 489 U.S. 288, 309 (1989).

Nor do Hunter's grounds for release "warrant" a sentence reduction of potentially many decades for such a brutal crime. The jury that viewed all of the evidence at trial found him guilty, and the sentencing guidelines—both then and now—are life imprisonment. Those guidelines, and the sentencing court's judgment, contemplated that Hunter would spend the rest of his life in prison, including any end-of-life treatment. Yet Hunter is now requesting a sentence reduction that would result in his immediate release, several decades early, based on a temporary pandemic that the entire world is enduring. Nothing about Hunter's reasons "warrant" such a drastic action, especially where unlike most people, Hunter had the ability to receive the Covid-19 vaccine and he refused.

Hunter's situation is not unique. Courts in this district and around the country have declined to grant compassionate release to inmates with severe obesity, even when the obese inmate had other health conditions as well. *See e.g., United States v. Powers*, WL 5046886 (E.D. Mich. Aug. 26, 2020) (denying compassionate release to 48-year-old with BMI of 45); *United States v. Pride*, 2020 WL 3971652 (D. Colo. July 14, 2020) (denying compassionate release to 37-year-old with hypertension and BMI of 40.4); *United States v. Peaks*, 2020 WL

11

2214231 (E.D. Mich. May 7, 2020) (denying compassionate release to 31-year-old with hypertension and BMI "a little over 44").

Hunter also claims that he should be released because he suffers from hypertension, hyperlipidemia, and sleep apnea. First, according to Hunter's medical records, he does not have sleep apnea. (Sealed Ex. B: Hunter BOP Medical Records, Bates Pg. 119). Second, even if he did, unlike severe obesity, the CDC has not determined that sleep apnea, hypertension, or hyperlipidemia increase a person's risk of severe illness from Covid-19. Instead, the CDC has placed hypertension in the category of conditions that *might* place a person at increased of severe illness or death from Covid-19, whereas hyperlipidemia and sleep apnea are not even in this category. CDC Risk Factors (as updated) (identifying the confirmed medical conditions that increase someone's risk from Covid-19). The Sixth Circuit has upheld a district court's reliance on this CDC guidance during the Covid-19 pandemic, including a district court's resulting decision that a defendant's hypertension did not justify compassionate release. *Elias*, ___ F.3d ___, 2021 WL 50169, at *4.

District courts have also declined to find that these conditions establish extraordinary and compelling reasons for compassionate release. *See e.g., United States v. Burroughs,* No. 09-20620, 2020 WL 5868380 at *2 (E.D. Mich. Oct. 02, 2020) (denying compassionate release to a defendant with hypertension,

12

hyperlipidemia, and chronic obstructive pulmonary disease (COPD)); *United States v. Vaughn,* No. 99-30068, 2021 WL 130967 at *1, *3, *4 (C.D. Ill. Jan. 13, 2021) (no extraordinary and compelling reasons existed where 50- year old defendant had been diagnosed with obesity, hypertension, sleep apnea, and hepatitis C). Likewise, Hunter's claim that he is former smoker is not an extraordinary or compelling reason for release. *United States v. Saxon,* No. 12 Cr. 320 (ER), 2020 WL 4548078, 2020 WL 130967 at *1, *3 (S.D. N.Y. Aug. 05, 2020) (no extraordinary and compelling reasons existed for 42- year old defendant who was a smoker).

### B. The factors in 18 U.S.C. § 3553(a) strongly weigh against compassionate release.

In addition to the eligibility criteria, the factors in 18 U.S.C. § 3553(a) do not support Hunter's release. Before ordering relief, the Court must consider the § 3553(a) factors and determine that release is appropriate. 18 U.S.C. § 3582(c)(1)(A). A defendant's failure to establish that the § 3553(a) factors support relief is an independent basis for denying compassionate release. *United States v. Ruffin*, 978 F.3d 1000, 1008–09 (6th Cir. 2020); *accord United States v. Austin*, 825 F. App'x 324, 325–27 (6th Cir. 2020) (upholding a district court's denial of compassionate release based on the § 3553(a) factors); *United States v. Kincaid*, 802 F. App'x 187, 188–89 (6th Cir. 2020) (same). So even if the Court

were to find that Hunter established extraordinary and compelling reasons for his release, the § 3553(a) factors should still disqualify him.

For starters, the seriousness of Hunter's offense cannot be overstated. Less than three months after he escaped from a prison camp, Hunter ambushed the victim and murdered her by shooting her in the head. Hunter's participation in the murder occurred as a result of his membership in a violent criminal enterprise. This was also not Hunter's first offense. He has several felony convictions including convictions for drug trafficking, felony firearm, and assault. This case simply marked the most serious offense in a long stretch of crime committed by Hunter.

Hunter's adult criminal behavior dates back to 1988, when at the age of 19, he was convicted of possession with intent to distribute a controlled substance. (PSR, ¶ 48). Hunter was sentenced to prison and in 1991, he was released on parole. A few months later, Hunter absconded from parole. Two months later, Hunter was arrested and charged with several crimes. He was convicted of assault and battery and sentenced to 90 days jail, with credit for time served. (PSR, ¶¶ 50, 51). In September, 1991, Hunter was returned to prison as a parole violator. On October 10, 1992, Hunter escaped from a parole camp. (PSR, ¶ 49). In 1993, Hunter was captured and was returned to prison. (*Id.*). In 1995, he was paroled again, but just months later, he again absconded from parole. (*Id.*). In August, 1996, while Hunter was still a parole absconder, police officers attempted to arrest

14

him while he was driving a stolen vehicle. (PSR, ¶ 53). Hunter fled from the officers and, while fleeing, discarded a semi-automatic handgun. (*Id.*). Hunter was convicted of receiving and concealing stolen property, felony firearm, and fleeing and eluding, and he was sentenced to prison. (PSR, ¶ 52). And less than three months after escaping from a parole camp—and while still on escape status— Hunter murdered Monica Johnson.

This record shows that Hunter's jail and prison sentences have never deterred him from committing crime. It also shows that Hunter's release would seriously endanger the public.

Hunter's behavior in prison in prison is further evidence that his sentence has not deterred him from engaging in criminal behavior, and that he remains a danger to the public. While serving his federal prison sentence, Hunter has been disciplined repeatedly (Ex. C: BOP Discipline):

- 2002 – possessing a dangerous weapon (lock in a sock) and fighting;
- 2003 – possessing a dangerous weapon (shank);
- 2003 – possessing intoxicants.
- 2003 – being insolent to prison staff;
- 2006 – possessing a dangerous weapon (shank);
- 2006 – fighting;
- 2007 – being insolent to prison staff;
- 2007 – refusing to obey an order;
- 2018 – assaulting a female staff member
- 2019 – refusing to obey an order.

15

Hunter can attempt to make all the excuses he wants about why he engaged in these acts. But that lengthy disciplinary record speaks for itself—and demonstrates that Hunter is nowhere near ready to reenter society. If Hunter cannot follow orders while confined, then he certainly cannot provide any assurance that he will follow the law if he is released. That makes him a continued danger to the public.

The § 3553(a) factors also require the Court to evaluate the need to provide just punishment, the need to reflect the seriousness of the offense, and the need to promote respect for the law. In all likelihood, Hunter has served less than half of his life sentence for murder. Releasing Hunter so early into his murder sentence does not come close to providing just punishment for or reflecting the seriousness of the offense. Instead, it minimizes the value of Monica Johnson's life and trivializes what was a cold-blooded murder.

The best way to deter Hunter from committing further crimes, to protect the public, to promote respect for the law, and to provide just punishment, is for the Court to deny his motion.

16

II.   **Hunter's Claim Regarding His Age And The Lower Sentences Of His Co-Defendants Is Not Exhausted And Is Not A Basis For Relief**

A.   **Disparate sentencing and Hunter's age at the time he murdered Monica Johnson are not "extraordinary and compelling reasons" for relief.**

In the supplemental brief submitted by Hunter's appointed counsel, Hunter claims that he received a harsher sentence than two of his co-defendants, and that this, combined with his age at the time he murdered Monica Johnson, somehow establishes extraordinary and compelling reasons for release.  (ECF No. 957, PageID.1810). However, because this claim was not raised in Hunter's initial request for compassionate release to the Bureau of Prisons or his pro-se brief, the Court should not consider this argument because Hunter has not satisfied the exhaustion requirement for that claim under 18 U.S.C. § 3582(c)(1)(A).

A district court may not grant a defendant's motion for compassionate release unless the defendant files it "after" the earlier of (1) the defendant "fully exhaust[ing] all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf," or (2) "the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility." 18 U.S.C. § 3582(c)(1)(A); *United States v. Alam*, 960 F.3d 831, 832 (6th Cir. 2020). As the Sixth Circuit held in *Alam*, this statutory exhaustion requirement is "a mandatory condition" that "must be enforced" when the government raises it. *Id.* at 832–36; *accord United States v. Raia*, 954 F.3d 594, 595–97 (3d Cir. 2020).

17

Although district courts have split on this issue, the best reading of Sixth Circuit law is that § 3582(c)(1)(A) requires issue-specific exhaustion. As the Sixth Circuit has explained, an exhaustion statute "written in more general terms" commands "issue exhaustion if an agency's rules so require." *Island Creek Coal Co. v. Bryan*, 937 F.3d 738, 746–47 (6th Cir. 2019) (citing *Woodford v. Ngo*, 548 U.S. 81, 90–91 (2006)); *accord Cuevas-Nuno v. Barr*, 969 F.3d 331, 334–35 & n.4 (6th Cir. 2020). Section 3582(c)(1)(A) is just such a statute, and the agency's rules here require an inmate to identify "[t]he extraordinary or compelling circumstances that the inmate believes warrant consideration" for compassionate release. 28 C.F.R. § 571.61(a)(1). Thus, an inmate seeking relief based on a combination of Covid-19 and a particular medical condition or conditions must first make *that* specific request to the Bureau of Prisons before seeking relief in court. *Island Creek Coal Co.*, 937 F.3d at 746–47; *see Alam*, 960 F.3d at 834–36 (emphasizing the issue-specific nature of exhaustion under § 3582(c)(1)(A)).

Hunter did not comply with § 3582(c)(1)(A)'s mandatory exhaustion requirement with respect to this new claim. His initial request to the BOP for compassionate release and his pro se initial brief both sought release on the grounds of potential exposure to Covid-19. Hunter's new claim stands wholly apart and has no relation to his initial claim, so it must be first raised with the Bureau of Prisons before it becomes a matter for the Court. To the extent that Hunter is now

18

seeking compassionate release on the grounds that his sentence was harsher than two of his co-defendants, and his age at the time he murdered Monica Johnson, his motion should be dismissed for failure to exhaust. *Alam*, 960 F.3d at 836

### B. Disparate sentencing and Hunter's age at the time he murdered Monica Johnson are not "extraordinary and compelling reasons" for relief.

Even if the Court were to consider Hunter's unexhausted reasons for release, the sentence of Hunter's co-defendants has no bearing on Hunter's motion. Hunter's situation is vastly different from that of his co-defendants.

First, the co-defendants cooperated – Hunter did not. This cooperation was extremely valuable in dismantling a violent criminal enterprise, which included cooperating against trigger-pullers like Hunter.

Second, In addition to Monica Johnson, Hunter was also indicted for murdering four other victims and was alleged to have been the trigger-puller in all four murders. (PSR ¶¶ 21, 26, 28). Although he was found not guilty of these murders, his indictment established probable cause that he committed them. *United States v. Suppa,* 799 F.2d 115, 119 (6th Cir. 1986). That certainly could explain why the government utilized Hunter's co-defendants as cooperators and not Hunter.

Third, there is no constitutional right to a plea bargain. *Rodriguez-Penton v. United State,* 905 F.3d 481, 489 (6th Cir. 2018). Because Hunter was not entitled

to a plea bargain, there is nothing extraordinary or compelling about the

government not offering him one or Hunter not accepting one.

Likewise, Hunter's age at the time he murdered Monica Johnson is not an

extraordinary or compelling reason for release eligibility.  Of significance is that in

making this claim, Hunter cites no cases that hold that a defendant established

extraordinary or compelling reasons for compassionate simply because that

defendant was almost 24-years old when they committed the crime that resulted in

their incarceration.

 It also bears noting that Hunter's own brief acknowledges that the part of

the brain that controls impulse control, complex decision-making, inhibition and

planning reaches full maturity when a person reaches "the early to mid-20s."  (ECF

No. 957, PageID.1808). When Hunter murdered Monica Johnson, he was 23 years

and 11 months old and had already reached his "early to mid-20s." Hunter also

ignores the fact that he continued to commit criminal offenses when he was 27-

years old and that he accumulated his Bureau of prison disciplinary record between

the ages of 31 and 49.

## III.    If the Court were to grant Hunter's motion, it should stay the release order pending any appeal by the United States.

If the Court were inclined to grant Hunter's motion, despite the

government's arguments above, the government would request that the Court's

release order include two provisions. First, the Court should order that he be subjected to a 14-day quarantine before release. Second, the Court should stay its order pending any appeal by the government to the Sixth Circuit. More specifically, the government would request that if the government files a notice of appeal before the 14-day quarantine ends, the Court's order would automatically be stayed through the completion of any appeal proceedings.

### Conclusion

Hunter's motion should be denied.

Respectfully submitted,

Matthew Schneider
United States Attorney


/s/ *Mark Bilkovic*
Mark Bilkovic
Assistant United States Attorney
Eastern District of Michigan
211 West Fort Street, Suite 2001
Detroit, MI 48226
(313) 226-9623
Mark.Bilkovic@usdoj.gov

Dated:  January 20, 2021

## **CERTIFICATE OF SERVICE**

I certify that on January 20, 2021, I electronically filed the foregoing

document with the Clerk of the Court for the Eastern District of Michigan using

the ECF system, which will send notification of such filing to the following:

Laura Danielle Mazor
Attorney for Ronald Hunter
Laura_mazor@fd.org

*s/ Mark Bilkovic*
Assistant United States Attorney
211 W. Fort St., Suite 2001
Detroit, Michigan 48226
Phone: (313) 226-9623
Mark.bilkovic@usdoj.gov
P48855